IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH T.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-428-CJP[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) ) ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in March 2015, alleging disability as of June 1, 2014. After holding an evidentiary hearing, ALJ P. H. Jung denied the application on September 8, 2016. (Tr. 20-27). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1).

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 31.

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ did not properly consider plaintiff's RFC in that he ignored medical evidence favorable to plaintiff and relied on the opinions of state agency consultants who had not reviewed crucial evidence including MRI reports.

2. The ALJ failed to develop the record by obtaining physical therapy and chiropractic records.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience

423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th

Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of

the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Jung followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB through December 31, 2019.

The ALJ found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine and left shoulder arthritis.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the medium exertional level with some physical limitations. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was not able to do his past work as a construction worker, but he was not disabled because he was able to do other jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1. Agency Forms**

Plaintiff was born in 1961. (Tr. 158). He turned 55 in February 2016, before the ALJ denied his claim. He worked as a construction laborer from 1979 to June 2014. He had a high school education. (Tr. 163).

Plaintiff said he was unable to work because of low back pain and limited ability to use his left arm. (Tr. 162).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in August 2016. Counsel had submitted two additional sets of medical records that day, and he indicated that there was no additional evidence and the record was complete. (Tr. 34-36).

Plaintiff testified that he had pain in his low back radiating into his left leg. His pain interfered with his sleep. He had to lie down or recline for about 3 to 4 hours during the day to accommodate his pain or catch up on his sleep. (Tr. 41-42).

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the ultimate RFC findings, that is, a person who could do work at the medium exertional level, i.e., lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8 hour workday; limited to no climbing of ladders, ropes, or scaffolds; frequent climbing of ramps and stairs; frequent balancing, stooping, kneeling, crouching, and crawling; frequent overhead, front, and lateral reaching with the left upper extremity; no frequent exposure to extreme cold, wetness, vibration,

hazards, machinery, and heights. The VE testified that plaintiff's past work was heavy and could not be performed by a person with this RFC. However, a person with this RFC could do other jobs such as laundry worker, hospital cleaner, and dining room attendant. She also testified that plaintiff did not have any skills that would transfer to light work. (Tr. 44-46).

The hearing lasted 21 minutes. (Tr. 34, 49).

### 3. Medical Records

The earliest medical record is a report of a consultative physical exam by Dr. Vittal Chapa. He examined plaintiff in April 2015. Plaintiff said that he had low back pain along with an aching sensation and occasional numbness in his left leg. On exam, he had no muscle atrophy or motor weakness. He could appreciate pinprick sensation in both lower extremities. The left knee reflex was absent. He had no paravertebral muscle spasm. Lumbosacral spine flexion was normal. Straight leg raising was negative. He had a slightly limited range of motion of the left shoulder due to an old gunshot wound. X-rays of the lumbar spine showed mild arthritis in the spine and sacral joints. (Tr. 214-219).

Plaintiff began seeing doctors at Belleville Family Practice in September 2015. He complained of back pain and left leg numbness that had been going on for at least a year and a half. He had some chiropractic treatment which included "electric shock." He had not had an MRI because he was claustrophobic and had not done physical therapy. On exam, the range of motion of his back was limited due to pain. He was non-tender to palpation at rest. Straight leg raising was

negative but he had moderate "tightness" in his glutes/hips when the leg was lowered. The assessment was chronic back pain. The doctor prescribed Gabapentin and noted that physical therapy "should help a lot." (Tr. 258-260).

Plaintiff returned to Belleville Family Practice in October 2015. He was seen by Dr. Labounty. His back pain had not been helped by physical therapy, Gabapentin, or muscle relaxers. On exam, straight leg raising was negative, but straight leg raising on the right caused left sided low back pain. Dr. Labounty decided to try a tricyclic antidepressant (TCA) in view of his back pain with radicular symptoms. He prescribed Elavil. The assessment was chronic back pain, "likely chronic wear and tear from manual labor his whole life." (Tr. 256-258).

An MRI was performed on December 28, 2015. The MRI showed left lateral protrusion of the L4-5 disc with moderate canal stenosis, stenosis of the left L4-L5 foramen, compression of the left L4 nerve root and probable compression of the left L5 nerve root; left lateral protrusion of the L3-4 disc with stenosis of the left L3-4 foramen and probable compression of the left L3 nerve root; stenosis bilateral of the L5-S1 foramen; and mild arthritis of the lumbar spine. (Tr. 267).

Dr. Labounty saw plaintiff again in January 2016. Plaintiff's back pain was worse when standing. It was an aching feeling and radiated down the left leg. He was not sure if the Mobic was helping yet. The record indicates that Mobic had been prescribed on January 12, 2016, two days before the visit with Dr. Labounty. He had stopped taking Gabapentin because it made him drowsy. He had failed

physical therapy but was trying to do home exercises.  On exam, ambulation was normal.  He had tenderness in the lumbar spine.  Straight leg raising was negative, but straight leg raising on the right caused left sided low back pain.  He had pain with flexion and extension.  The assessment was chronic back pain with known foraminal stenosis and no red flags.   The plan was to increase the dosage of Mobic and to restart Gabapentin at night to help with sleep.  He was referred to pain management for evaluation for injections.   (Tr. 254-256).

Plaintiff saw Dr. Labounty on April 8, 2016.  He had not seen Dr. Nasser "because he heard that steroid injections wouldn't be helpful."  He had a motor vehicle accident a few days earlier.   He had no fractures, but had been given muscle relaxers and ibuprofen.  His back pain was not better.  He had stopped taking Mobic.  He had numbness and tingling in his left leg.  On exam, ambulation was normal.  He had tenderness to the lumbar spine and was holding his back in a left side bend.  Dr. Labounty prescribed Baclofen, a muscle relaxer.  He noted that plaintiff had failed multiple other therapies, and he would try to get Lyrica or Cymbalta approved.  (Tr. 252-254).

On April 11, 2016, plaintiff saw Dr. Padda, a pain management specialist.  Dr. Padda found that, following his recent automobile accident, he had low back pain with "radicular finding."  The doctor noted that plaintiff had back pain before the accident with "some degree of leg symptoms in the past but nothing of any significance for about 6 months prior to this collision."  He now had "dense hypoesthesias with L4-5, S5-S1 burning, tingling, aching, and inability to load

there." Plaintiff had a TENS unit from Dr. Holland, and was seeing a chiropractor. Dr. Padda ordered an MRI. (Tr. 274).

The MRI showed diffuse disc protrusion at L2-3 with left preponderance effacing the thecal sac; diffuse disc protrusion at L3-4 with left preponderance and annular tear compressing the thecal sac, stenosis of the spinal canal, and encroachment on the left and right exiting L-3 nerve roots, more on the left; diffuse disc protrusion at L4-5 with left preponderance and annular tear compressing the thecal sac, stenosis of the spinal canal, and encroachment on the left and right exiting L-4 nerve roots, more on the left; and diffuse disc protrusion with effacement of the thecal sac at L5-S1 without impingement of the exiting nerve roots. (Tr. 280-281).

Plaintiff returned to Dr. Padda on April 26, 2016. He was going to physical therapy three times a week. The "concordance of subjective to clinical finding" was high. Straight leg raising was positive on both sides. They apparently discussed facet joint injections. Plaintiff indicated that he would call when ready to be treated. (Tr. 283-288).

4.  **State agency consultant's review**

In May 2015, Dr. Pardo, a state agency consultant, assessed plaintiff's RFC based on a review of the file. The only medical record reviewed was Dr. Chapa's report of his examination. Dr. Pardo concluded that plaintiff was capable of work at the medium exertional level with limitations in the use of his left arm. (Tr. 58-63). In July 2015, a second state agency consultant agreed that plaintiff could

do medium work with limitations in the use of his left arm, but thought he should also be limited to no climbing of ladders, ropes, or scaffolds; and frequent climbing of ramps and stairs; and frequent balancing, stooping, kneeling, crouching, and crawling. (Tr. 78-84).

## Analysis

The ALJ's discussion of the medical evidence relating to plaintiff's back condition is brief and omits reference to evidence favorable to plaintiff's claim.

The ALJ said that plaintiff's primary care provider made "fairly routine clinical findings," except for pain on flexion and extension and tenderness over the left SI joint. In discussing the treatment by Dr. Padda, the ALJ incorrectly said that there was "just one visit of record." The ALJ acknowledged the results of the two MRIs suggest "significant abnormalities," but he downplayed those abnormalities, stating that "the clinical findings summarized above are quite benign, except for some lumbar pain and tenderness." (Tr. 24).

While it is true that an ALJ is not required to discuss every piece of evidence in the record, it is well-established that an ALJ "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014), collecting cases.

The ALJ completely overlooked the second visit to Dr. Padda on April 26, 2016. At that visit, Dr. Padda had the results of the second MRI. He noted positive straight leg raising and said the "concordance of subjective to clinical finding" was high. He also failed to note that, following the automobile accident,

plaintiff was using a TENS unit and going to physical therapy. In fact, the ALJ did not mention the accident at all.

Further, the ALJ gave great weight to the state agency consultants' opinions that plaintiff is capable of doing medium exertion work. The ALJ said their opinions were "consistent with the routine clinical findings discussed above." (Tr. 25). However, those two doctors saw no medical records other than Dr. Chapa's report. They obviously did not review the MRIs. And, the clinical findings discussed by the ALJ ignored the second visit to Dr. Padda.

The Commissioner's brief argues, in essence, that the ALJ is not required to comment on every piece of evidence in the record. While that is correct, it is also true that an ALJ is not permitted to "cherry-pick" the evidence, ignoring the parts that conflict with his conclusion. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). While he is not required to mention every piece of evidence, he "must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000).

Further, in the circumstances of this case, it was error for the ALJ to rely on the state agency consultants' opinions where they did not see the vast majority of the medical evidence, including the MRI results. See, *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018), and cases cited therein.

The difference between light and medium work is crucial here. Plaintiff turned 55 years old while his claim was pending. If he were limited to light work,

he would be deemed disabled at age 55 under the Grids. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §202.00(c); Table 2, Rule 202.06. The ALJ's failure to consider the medical evidence fully and reliance on outdated medical opinions undercut the evidentiary support for his conclusions.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The ALJ fails to build the requisite logical bridge where he relies on evidence which "does not support the propositions for which it is cited. " *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). The Court must conclude that ALJ Jung failed to build the requisite logical bridge here. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2010), citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Plaintiff also argues that the ALJ erred in failing to obtain the physical therapy and chiropractic records. However, plaintiff was represented by counsel and the ALJ was entitled to assume that he was putting his strongest case forward. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). In any event, on remand, plaintiff will have the opportunity to submit additional evidence.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that

he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: June 26, 2018.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**